UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

JEFFREY D HOUSE,

                Plaintiff,

    v.                                                            Case No. 19-cv-1307-bhl

NICHOLAS GROTH, et al.,

                Defendants.

_____

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

_____

        On April 5, 2017, a Racine County judge issued a search warrant for Plaintiff Jeffrey House's single-family residence. Police executed the warrant and obtained marijuana and drug paraphernalia. According to House, none of this should have happened; the judge approved the warrant on a mere hunch and without probable cause. House filed this lawsuit, pursuant to 42 U.S.C. §1983, against the various City of Racine Police Officers who searched his property, alleging violations of his Fourth and Fourteenth Amendment rights. Both parties have moved for summary judgment. Because there is no dispute that the warrant was validly issued and executed, Defendants' motion will be granted, and Plaintiff's motion will be denied.

### FACTUAL BACKGROUND

        On April 5, 2017, Steven Vantrease and passenger Kyle Everts were driving east on 12th Street from Washington Avenue toward Racine Park High School when a gray Mercury Grand Marquis passed them and struck their vehicle's right front quarter panel and bumper. (ECF No. 64 at 3-4.) The Mercury did not stop, so Vantrease pursued it until it parked alongside 1030 Hilker Place. (*Id.* at 4.) At that point, the Mercury's driver exited his vehicle and entered 1030 Hilker Place. (*Id.* at 5.) A short while later, he returned, armed with a black handgun, which he pointed at Vantrease's car. (*Id.*) Vantrease fled the scene and contacted the Racine Police Department. (*Id.*) He and Everts met with Officers Scott Keland and Venise Voss and shared a video they had recorded that captured the Mercury's license plate. (*Id.* at 5-6.)

Privy to this information, Racine Police Investigator Nicholas Groth drove to 1030 Hilker Place and spotted the Mercury parked in the driveway. (*Id.* at 6.) Groth, along with Officer Don Rybarik and Sergeant Robert Thillemann, conducted a stake out, which lasted until Jeffrey House exited the residence, entered the Mercury, and drove off. (*Id.*) Rybarik stopped House on 10th Street, and, with House's consent, Groth searched his vehicle but did not locate a firearm. (*Id.*) When asked who had driven the Mercury that day, House responded that his uncle, Charles House, might have used it, and he himself had taken it to a Walgreens. (*Id.* at 6-7.) Groth contacted Officer Warren Jepson and asked him to present Vantrease a photo lineup that included images of both Jeffrey and Charles House. (*Id.* at 7.) Jepson obliged, but Vantrease could not identify either House as the offender. (*Id.*)

Suspecting that the perpetrator must have stashed the firearm used in that morning's altercation inside 1030 Hilker Place, Groth drafted an affidavit requesting a search warrant for the property. (ECF No. 65-1.) The affidavit represented that both Jeffrey and Charles House were convicted felons and, therefore, prohibited from possessing a firearm. (ECF No. 64 at 7.) It also stated that Charles House was currently out on bond after his recent arrest in a narcotics investigation. (*Id.*) Based on Groth's affidavit, a Racine County judge issued a search warrant for 1030 Hilker Place, described as a "single family, two story residence with tan colored siding" with "the numbers 1030 . . . affixed to the east face of that home." (ECF No. 65-2 at 1.) The warrant described the property to be seized as:

> controlled substances, related paraphernalia, firearms, gang related material, electronic equipment verified as stolen or with serial numbers removed or altered, electronic devises that record data I.E., telephone numbers & messages inclusive of the data contained within the electronic memory of the device, documents, bank records, and related paraphernalia, including packaging materials, money, records, buccal swabs for DNA standard, documents of transactions and documents.

(*Id.*) The warrant was returned the next day, April 6, 2017, with the following certification:

> I hereby certify that by virtue of the above Warrant, I searched the above named body, property, or premises and found that following person(s) or property:

> Document, marijuana, drug paraphernalia, and have the same now in my possession, subject to the direction of the court.

(ECF No. 64 at 14.)[1]

## LEGAL STANDARD

"Summary Judgment is appropriate where the admissible evidence reveals no genuine issue of any material fact." *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 707 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(c)). Material facts are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of "material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the parties assert different views of the facts, the Court must view the record in the light most favorable to the nonmoving party. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

## ANALYSIS

Plaintiff Jeffrey House alleges that Defendants—City of Racine Police Officers Nicholas Groth, Scott Keland, Joseph Villalobos, Nicholas Contreras, Donald Rybarik, Joshua Laforge, Kevin Kupper, Edward Ide, and Peter Boeck—violated his Fourth and Fourteenth Amendment rights when they executed a no-knock raid of his property pursuant to a warrant issued by a Racine County judge.[2] Because probable cause existed to support the warrant, and because, even if it did not, Defendants are protected by the good faith exception, Plaintiff's claims fail, and Defendants' motion for summary judgment must be granted.

---

[1] Plaintiff has not complied with Civil Local Rule 56(b), which requires parties seeking and opposing summary judgment respectively to submit statements of proposed material facts and responses to their opponent's statements. Plaintiff filed neither and argues (incorrectly) that his Rule 26 initial disclosures satisfied these requirements. (ECF No. 61 at 4.) Under Civil Local Rule 56(b)(4), his noncompliance is grounds for the Court to "deem uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment." The Court generally offers some leniency to *pro se* litigants. *See Thomas v. Foster*, 138 F. App'x 822, 823 (7th Cir. 2005). And it has discretion on whether to apply its local rules strictly. *See Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011). But Plaintiff has left the Court little choice here. A court cannot assume the role of lawyer and fish the record for evidence favorable to a *pro se* litigant. *See Castellano v. Mahin*, No. 17-cv-598-JPS, 2018 WL 654451, at *2 (E.D. Wis. Jan. 31, 2018). Nor can it build a case for a party who has neglected to do so. *Id.* And it certainly cannot object to facts one party contends are undisputed. Accordingly, the Court will deem all material facts in Defendants' proposed statement of facts admitted for the purpose of summary judgment. In the interest of fairness, however, the Court will also accept as undisputed the two proposed findings of fact included in Plaintiff's reply brief.

[2] Plaintiff's briefing also contains frequent references to "excessive force." (*See, e.g.,* ECF No. 58 at 9.) The initial complaint filed in this case arguably stated a claim for excessive use of force in violation of the Fourth Amendment. (ECF No. 1.) But that complaint is no longer operative. Plaintiff's amended complaint contains no excessive force claim. (ECF No. 31.) Accordingly, Plaintiff's arguments are misplaced, and there is no excessive force claim before the Court.

### I. The Affidavit Supplied Probable Cause to Support a Search Warrant.

Plaintiff first argues that any officer who reviewed Groth's affidavit should have known that it could not have supported probable cause for the search warrant issued. Therefore, he continues, if those officers participated in the search of 1030 Hilker Place, they necessarily exhibited deliberate indifference toward his Fourth and Fourteenth Amendment rights.

A judge may only issue a search warrant based on probable cause. *See United States v. Sidwell*, 440 F.3d 865, 868 (7th Cir. 2006). And "[w]hen an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit." *United States v. Peck*, 317 F.3d 754, 755-56 (7th Cir. 2003) (citing *United States v. Roth*, 391 F.2d 507, 509 (7th Cir. 1967)). In those cases, "[p]robable cause exists when, considering all the circumstances, the affidavit sets forth sufficient facts to induce a reasonably prudent person to believe that a search will uncover contraband or evidence of a crime." *Sidwell*, 440 F.3d at 868 (citations omitted). Because probable cause "requires only a probability, not absolute certainty, that evidence of a crime may be found," *United States v. Farmer*, 543 F.3d 363, 377 (7th Cir. 2008) (citation omitted), an issuing judge's decision should be upheld so long as substantial evidence supports that decision. *United States v. Lloyd*, 71 F.3d 1256, 1262 (7th Cir. 1995).

In this case, the affidavit set "forth sufficient facts to induce a reasonably prudent person to believe that a search [would] uncover contraband or evidence of a crime." *Sidwell*, 440 F.3d at 868 (citations omitted). It contained sworn testimony that the driver of a specific Mercury Grand Marquis damaged Vantrease's car, then parked the Grand Marquis at 1030 Hilker Place, entered the residence, and returned with a gun, which he pointed at his victims. (ECF No. 65-1 at 1.) Based on Plaintiff's own admission, the driver was likely either himself or his uncle, both of whom were convicted felons, not allowed to possess a firearm. (*Id.* at 2.) And since police did not discover a firearm during their search of the Mercury, logic dictated that the weapon likely remained inside 1030 Hilker Place. (*Id.*) Further, "illegally possessed guns are more likely used for illegal purposes." *United States v. Duran*, 407 F.3d 828, 838 n.4 (7th Cir. 2005). Police had recently arrested one of the two suspects as part of a narcotics investigation. (ECF No. 65-1 at 2.) Under these circumstances, it was reasonable to believe that officers might also uncover controlled substances at the subject property. *See United States v. Conklin*, 154 F. Supp. 3d 732, 739 (S.D. Ill. 2016) (finding a "common sense relation" between drug use/distribution and guns). And Groth

represented that, based on his knowledge and experience, search warrants executed pursuant to drug investigations often turn up related packaging materials, bank statements, phone listings, stolen electronics, etc. (ECF No. 65-1 at 2-3.) In short, "given all the circumstances set forth in the affidavit before him," the issuing judge reasonably determined that "there [was] a fair probability that contraband or evidence of a crime" would be found at 1030 Hilker Place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Plaintiff contends that Groth's affidavit "reference[d] a nonexistent drug investigation" (presumably regarding his Uncle Charles) in order to trick the Racine County judge into expanding the scope of the warrant to include controlled substances. (ECF No. 69 at 2.) But that drug investigation was not fiction; it actually happened. *See House v. Cleland*, No. 19-cv-397, 2021 WL 1626442, at *2-3 (E.D. Wis. Apr. 27, 2021) (noting that, on February 10, 2017, Racine Police Officers arrested Charles House after searching the area outside his residence and discovering a baggie they believed contained heroin). It was proper to include this accurate information in the affidavit.

Plaintiff also suggests that Vantrease's failure to pick him out of a photo lineup represents an insurmountable barrier to probable cause. (ECF No. 58 at 7.) No court has ever held as much, and, in fact, considering the general unreliability of eyewitness identifications, *Perry v. New Hampshire*, 565 U.S. 228, 244-45 (2012), it would not make sense to treat the outcome of a photo lineup as dispositive either way. A judge's probable cause determination is evaluated according to the totality of the circumstances. *Lloyd*, 71 F.3d at 1262-63. An eyewitness' performance in a photo lineup is just one of those circumstances, and here, it is insufficient to vitiate probable cause.

## II. The Warrant Met the Fourth Amendment's "Particularity" Requirement.

Plaintiff further contends that even if the affidavit supplied probable cause, the warrant issued was overbroad. Specifically, Plaintiff asserts that "the warrant issued does not describe with particularity the things to be seized and the place(s) within the Hilker St. residence to be searched." (ECF No. 31 ¶62.)

"The particularity requirement of the Fourth Amendment protects against open-ended warrants that leave the scope of the search to the discretion of the officer executing the warrant, or permit seizure of items other than what is described." *United States v. Clark*, 754 F.3d 401, 410 (7th Cir. 2014) (citing *Stanford v. Texas*, 379 U.S. 476, 485-86 (1965)). "A warrant satisfies this requirement if it leaves nothing about its scope to the discretion of the officer serving it." *Id.*

(citing *Jones v. Wilhelm*, 425 F.3d 455, 462 (7th Cir. 2005)). But a warrant need not descend to the microscopic level. "It is enough if the description is such that the officer with a search warrant can, with reasonable effort[,] ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503 (1925) (citations omitted). Elaborate detail is unnecessary. *United States v. Pritchard*, 745 F.2d 1112, 1121-22 (7th Cir. 1984). As is minutiae. *Id.* Simply put, the Fourth Amendment "specifies only two matters that must be 'particularly described' in the warrant: 'the place to be searched' and 'the persons or things to be seized.'" *United States v. Grubbs*, 547 U.S. 90, 97 (2006).

In this case, the warrant clearly identified 1030 Hilker Place as "the place to be searched," even including unique features that might right a wayward officer. (ECF No. 65-2 at 1.) It used similar precision when describing the "things to be seized," such as "electronic equipment verified as stolen or with serial numbers removed or altered, . . . bank records, . . . packaging materials." (*Id.*) This satisfies the Fourth Amendment. Plaintiff seems aggrieved that the warrant did not provide step-by-step instructions, *e.g.*, "First, open the top left drawer of the grain wood armoire in the southwest corner of the living room." But search warrants need not "include a specification of the precise manner in which they are to be executed." *Dalia v. United States*, 441 U.S. 238, 257 (1979). Indeed, the only way to achieve the specificity Plaintiff seeks would be to collate and maintain private citizen's information in a regularly updated government database, an ostensibly greater threat to the Fourth Amendment than the warrant at issue here.

### III. Even If Probable Cause Did Not Support the Search Warrant, Defendants Would Be Shielded by the Good Faith Exception.

As a final matter, the Court notes that, had Plaintiff successfully demonstrated that probable cause did not exist, Defendants would still prevail on the so-called "good faith exception." A police officer's "'decision to obtain a warrant is prima facie evidence that he or she was acting in good faith.'" *United States v. Prideaux-Wentz*, 543 F.3d 954, 959 (7th Cir. 2008) (quoting *United States v. Olson*, 408 F.3d 366, 372 (7th Cir. 2005)). A party may only rebut this prima facie case "by presenting evidence establishing either that: (1) the warrant issuing officer 'wholly abandoned his judicial role' and failed to 'perform his "neutral and detached" function,' serving 'merely as a rubber stamp for police'; or (2) the affidavit submitted in support of the warrant was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Olson*, 408 F.3d at 372 (quoting *United States v. Leon*, 468 U.S. 897, 914 (1984)). Plaintiff does not allege that the Racine County judge who issued the warrant abandoned his judicial role. (ECF

No. 66 at 11.) And the Court has already held that the affidavit submitted in support of the warrant supported the existence of probable cause. Defendants were therefore entitled to rely on the issuing judge's determination, and the good faith exception would immunize them from suit even if probable cause were found wanting.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment, ECF No. 58, is **DENIED**. Plaintiff's motion to compel discovery, ECF No. 62, is also **DENIED as moot**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment, ECF No. 63, is **GRANTED**, and the case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on August 4, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge